IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAUN BRAMES, #M21607                ) | |
|                                                          ) | |
|            **Plaintiff,**                          ) | |
|                                                          ) | |
|      vs.                                               ) | Case No. 14-cv-00410-MJR |
|                                                          ) | |
| WARDEN HODGE, WARDEN STORM, ) | |
| CHAPLAIN VAUGHN, T. KITTLE,      ) | |
| SCHOON, SARAH JOHNSON, T. KEEN, ) | |
| J. COE, AND ILLINOIS DEPARTMENT ) | |
| OF CORRECTIONS,                          ) | |
|                                                          ) | |
|            **Defendants.**                    ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Shaun Brames, an inmate at Lawrence Correctional Center ("Lawrence"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. He also asserts state law claims for battery and intentional infliction of emotion distress. The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action fail to state a claim and are thus subject to dismissal.

**The Complaint**

In a 27-page complaint (supported by 54 pages of exhibits), Plaintiff asserts multiple counts against nine defendants. For purposes of this threshold review, the following facts are relevant:

Plaintiff entered IDOC's custody in June, 2011. Shortly thereafter, on September 9, 2011, he filed his first grievance, which stated "I am a Hebrew Isrealite [sic] Practicing under the Jewish Faith Judaism. I am being denied the right to attend Jewish Services." (Doc. 1, Ex. 1(a)). His requested relief was to be "allowed to attend Jewish Services and worship My God the way I see fit." *Id*. On September 21, 2011, Defendant T. Kittle provided the following response: "Per Chaplain: Hebrew Israelites are not classified as Jews. If the offender desires more study materials pertaining to the Hebrew Israelite faith it will be provided upon request." *Id*. Since 2011, Plaintiff's offender identification card has stated that he is Jewish. (Doc. 1, ¶ 42).

At various times over the next two and a half years, Plaintiff alleges that he was denied a kosher diet and not allowed to participate in Jewish religious services and celebrations, including Passover and Hanukkah. (*See* Doc. 1 ¶¶ 21, 27, 41, 43-44 and Exs. 1(a)-7). Plaintiff continued to file grievances and appeals, which Plaintiff maintains were never properly addressed. Plaintiff alleges that he sent Defendant Vaughn, head chaplain, numerous letters requesting that he be allowed to participate in Jewish services. (*See* Doc. 1, ¶¶ 22, 27 and Ex. 7). Plaintiff asserts that Defendant Vaughn never responded to his inquiries and continued to refuse to allow him to participate in Jewish services.

On February 14, 2012, Plaintiff filed a grievance stating that he had been taken off the kosher diet because he had purchased items from the commissary which were not kosher. (Doc. 1, Ex. 1(b)). Plaintiff asserted that he was not aware of which items were permissible to

buy and that he attempted to meet with the chaplain to discuss the issue but was not able to. On March 7, 2012, Counselor K. Hordon reviewed the grievance and responded, "Your concern has been expressed to the chaplain. You have been added back on the kosher list." *Id*.

On April 7, 2012, Plaintiff filed another grievance, which stated that Plaintiff had requested for two years to be added to the Passover Commemoration, but had always been denied. (Doc. 1, Ex. 1(c)). In addition, on May 9, 2012, Plaintiff sent Defendants Hodge and Storm (wardens at Lawrence) notarized letters informing them of the situation (*See* Doc. 1, Ex. 2, 3). On June 5, 2012, Counselor Schoon responded, "At this time we do not have a 'passover commemoration' service. If you need more information in order to practice your faith send a request to the chaplain." *Id*.

Plaintiff then filed an appeal with the administrative review board on June 18, 2012, but it was returned and Plaintiff was instructed to provide a copy of his grievance report. (Doc. 1, Ex. 5). In addition, Sarah Johnson, the official who reviewed the appeal wrote on the appeal form, "You should first contact the Chaplain in writing with this request." *Id*. It is unclear what documents Plaintiff filed with this initial appeal, but in an exhibit dated June 18, 2012 and entitled, "Appeal," Plaintiff stated, "The counselor has the nerve to tell me to send a request to the chaplain. If the chaplain had been doing his job I would not have filed the grievance. I've written requests to the chaplain and I've heard nothing from him." (Doc. 1, Ex. 4). On July 18, 2012, Plaintiff sent another notarized letter to Defendant Storm informing him of the situation and asking him to intervene. (Doc. 1, Ex. 6.)

Plaintiff alleges that sometime in September 2012 he was again removed from the kosher diet and denied the right to attend religious services with others practicing the Jewish faith. (*See* Doc. 1, ¶¶ 27-32). Over the next several months, Plaintiff states that he contacted the

chaplain in writing several times and requested that he be allowed to attend religious services, but the chaplain never responded. (Doc. 1, ¶ 32). He also filed over a dozen grievances regarding the same issues (*See* Doc 1, Ex. 8(b)-23) and a second appeal to the administrative review board (Doc. 1, Ex. 19). Defendant T. Keen reviewed the administrative appeal on August 1, 2013 and indicated on the review form that additional information was required. However, he also checked the box "This office previously addressed this issue on 7/2012" under the section "No further redress." *Id*. It appears that the other grievances went unanswered.

Plaintiff further contends that beginning sometime in September 2012, when he was taken off a kosher diet, he went on a "hungerstrike" and began "eating only salads and fruit to keep from violating Plaintiff's kosher laws." (Doc. 1, ¶ 41). In July 2013, Plaintiff was seen by APN-L. Phillippe at the health care unit. Plaintiff states that Phillippe was concerned about how much weight Plaintiff had lost and she wrote a prescription instructing that he be put back on the kosher diet. *Id*. However, Plaintiff alleges that Defendant Chaplain Vaughn voided the prescription. *Id*. Plaintiff claims that he then went on a total hunger strike for five days. (Doc. 1, ¶ 45).[1] On the fifth day, Plaintiff states that he ran into Defendant Warden Hodge at the afternoon feeding and told him about the hunger strike. Plaintiff further states that "Hodge immediately informed the kitchen staff to put Plaintiff back on the kosher diet." *Id*.

Since that time, Plaintiff has remained on a kosher diet. Plaintiff, however, complains that the kosher diet is comprised of 40% beans and Plaintiff contends that he cannot eat beans "because the beans make gas build up around Plaintiff [sic] heart to the point that Plaintiff is in agony." (Doc. 1, ¶ 48). Plaintiff has been seen by Defendant Dr. Coe, but apparently Dr. Coe has refused to approve Plaintiff's request for a no-bean diet. *Id*. Plaintiff

---

[1] Plaintiff claims that he reported his hunger strike daily to a Lieutenant "John Doe." Plaintiff includes a document related to Doe in the exhibits, but does not name Doe in the complaint or in any of the counts. At this time, the Court is not treating this unnamed individual as a defendant in this case.

maintains that he is unable to eat many of his meals because even the juice of the beans causes him to experience severe pain.

As a result of the above allegations, Plaintiff claims he has experienced physical and mental injuries including the loss of 40 pounds, hunger pangs for 11 months, four dead fingernails on his right hand, and severe emotional and psychological distress. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

**Discussion**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to reorganize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff has articulated the following constitutional and statutory claims, which shall receive further review:

**Count 1:      Free Exercise of Religion under First Amendment**

The gravamen of Plaintiff's complaint is that Defendants have deprived Plaintiff of his right to freely exercise his religion in violation of the First Amendment. It is well-established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990); *see also Sasnett v. Litscher,* 197 F.3d 290, 292 (7th Cir. 1999); *Al-Alamin v. Gramley,* 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). The observance of religiously mandated

dietary restrictions is a form of religious practice protected by the First Amendment. *Hunafa,* 907 F.2d at 47. On the other hand, a prison regulation that impinges on an inmate's First Amendment rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). Such interests include inmate security and the proper allocation of limited prison resources. *See id.* at 348, 352-53; *Turner,* 482 U.S. at 90; *Al-Alamin,* 926 F.2d at 686.

### A. Monetary Relief

A civil rights action against state officials under 42 U.S.C. § 1983 is "a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)); *see also Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005). Typically, an official who rules "against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a *completed act of misconduct* does not." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (emphasis added). In other words, the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted).

Plaintiff alleges that Vaughn repeatedly denied Plaintiff the opportunity to attend Jewish services, meetings, and holiday celebrations and refused Plaintiff's request to be put on a kosher diet. While somewhat less clear, it appears that Plaintiff is also claiming that Defendant Coe has violated his rights by refusing to accommodate Plaintiff's request for a no-bean kosher

diet. Since the only kosher diet available to Plaintiff contains beans, and Plaintiff maintains that beans cause him severe gastrointestinal pain, Plaintiff argues that he is forced to choose between adhering to a diet that conforms with his religious beliefs but causes him pain or eating a diet that violates his religious beliefs. At this early stage, it is not possible to assess whether legitimate penological interests may exist that would outweigh Plaintiff's right to practice his religion. Therefore, this claim against Defendant Vaughn and Coe, in their individual capacities, shall receive further consideration.

In addition, Plaintiff contends that Defendants Hodge, Storm, Kittle, Schoon, Johnson, and Keen, through his grievances, were adequately notified of the ongoing First Amendment violations and chose to "turn a blind eye." At this juncture, more facts are needed to determine whether that was in fact the case. Therefore, this claim against Defendants Hodge, Storm, Kittle, Schoon, Johnson, and Keen in their individual capacities, shall also receive further consideration.

Finally, Plaintiff claims that IDOC, through its rules and regulations, has interfered with his right to freely exercise his religion. However, Plaintiff cannot maintain a suit for damages against IDOC, because it is a state agency.[2] The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v.*

---

[2] In a separate count, Plaintiff seeks to hold IDOC liable for its failure to properly supervise Plaintiff pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978) (holding that a local government could be sued as a person under § 1983). IDOC is a state government agency; therefore, the reasoning in *Monell* does not apply.

*Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same). As such, IDOC will be dismissed with prejudice.

### B. Injunctive Relief

Plaintiff also seeks an injunction ordering IDOC to allow Plaintiff to participate in Jewish religious services and to receive a no-beans kosher diet. Typically, in a claim for injunctive relief, the government official who is responsible for carrying out the requested relief would be named as a defendant in his or her official capacity. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). In the context of prison litigation, the official is usually the warden of the institution where the inmate is incarcerated. In this case, the warden is Defendant Hodge. Accordingly, Plaintiff may proceed on his claim for injunctive relief against Defendant Hodge in his official capacity. *See* Fed. R. Civ. P. 21; Fed. R. Civ. P. 17(d);[3] *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**Count 2:** **Free Exercise of Religion under RLUIPA**[4]

RLUIPA does not provide a cause of action for money damages against officials in their individual capacity, *see Nelson v. Miller,* 570 F.3d 868, 886-89 (7th Cir. 2009), or official capacity, *see Sossamon v. Texas*, 131 S. Ct. 1651, 1655 (2011). Therefore, Plaintiff may not pursue a claim for damages against any Defendants under RLUIPA. However, Plaintiff may proceed on his claim for injunctive relief under RLUIPA against Defendant Hodge, in his official capacity, for the same reasons discussed above.

---

[3] Federal Rule of Civil Procedure 21 states in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Rule 17(d) provides: "A public officer who . . . is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added."

[4] Plaintiff also refers to the Religious Freedom and Restoration Act, but the Supreme Court has held that RFRA may not be applied against state or local governments. *See City of Boerne v. Flores*, 521 U.S. 507 (1997).

**Count 3:  Intentional Infliction of Emotional Distress**

According to the Illinois Supreme Court, the tort of intentional infliction of emotional distress includes the following elements:

> (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress[;] and (3) the conduct must in fact cause severe emotional distress.

*Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988)).

Plaintiff alleges the barest of facts to support his claim against Defendants. At this very early stage, the Court cannot properly assess whether this is a valid claim; therefore, Plaintiff may proceed on this claim.

**Dismissed Counts**

Plaintiff has failed to state a viable claim for battery **(Count 4)**. Under Illinois state law, "[a] battery occurs when one 'intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.'" *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (quoting 720 Ill. Comp. Stat. 5/12–3(a)). Plaintiff does not allege that *any* sort of physical contact occurred between him and any of the Defendants. Plaintiff does allege that he suffered bodily harm, but other than a bare assertion that Defendants "intentionally caused malicious and offensive harm to Plaintiff," Plaintiff alleges no facts supporting his claim that Defendants intended to cause him bodily harm. Therefore, Count 4 will be dismissed without prejudice.

In addition, Plaintiff's due process claim **(Count 5)** and his Eighth Amendment claim **(Count 6)** overlap and merge with his free exercise claim (**Count 1**). Accordingly, Plaintiff's due process and Eighth Amendment claims will be dismissed without prejudice.  *See Conyers v.*

*Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels").

In summary, Defendant IDOC is dismissed with prejudice. Plaintiff shall be allowed to proceed with his First Amendment free exercise claim (Count 1) for monetary relief against all other Defendants. He shall also be allowed to proceed with his First Amendment free exercise claim (Count 1) and his RLUIPA claim (Count 2) for injunctive relief against only Defendant Hodge, in his official capacity as Warden of Lawrence. Plaintiff may also proceed on his claim of intentional infliction of emotional distress (Count 3) against all Defendants. Counts 4, 5, and 6 will be dismissed without prejudice against all Defendants for failure to state a claim upon which relief may be granted.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be addressed by the Court in a separate order.

The motion for service at government expense (Doc. 4) is **GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below for those Defendants who remain in the action. No service shall be made on the dismissed Defendant.

### Disposition

**IT IS HEREBY ORDERED** that Defendant **ILLINOIS DEPARTMENT OF CORRECTIONS** is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall add Defendant **HODGE** in his official capacity for purposes of injunctive relief only.

Plaintiff's claim for damages against Defendants **VAUGHN, COE, HODGE, STORM, KITTLE, SCHOON, JOHNSON,** and **KEEN** on **COUNTS 1, 2, and 3** shall proceed.

**Counts 4, 5, and 6** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **VAUGHN, COE, HODGE, STORM, KITTLE, SCHOON, JOHNSON,** and **KEEN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the

date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 2, 2014**

s/ MICHAEL J. REAGAN
United States District Judge